### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### TURNER TOOL AND JOINT REBUILDERS CORPORATION, Respondent.

No. 81–4331
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 19, 1982.

---

638

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Gary Norton, Corpus Christi, Tex., for respondent.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

The National Labor Relations Board petitions for enforcement of a remedial order directing Turner Tool and Joint Rebuilders Corporation to cease and desist from certain activities found violative of sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and 158(a)(3), and to take certain affirmative steps to effectuate the purposes of the Act. We modify and enforce.

The factual setting of this labor-management confrontation is not complex and there is little meaningful dispute reflected in the record. In the instances when the testimony was, or tended to be, in conflict, the Administrative Law Judge made specific and dispositive credibility determinations. The ALJ concluded a hearing with findings that Turner Tool had committed unfair labor practices, breaching section 8(a)(1) by unlawfully interrogating employees about

their union activity and breaching section 8(a)(3) by discharging Gilbert Villarreal on April 23, 1980.

Villarreal worked as a welder at Turner Tool for a few months in 1976 and was again employed from October of 1979 until his discharge. Sometime in March 1980, during a regular biweekly meeting between employees and supervisors, Charles C. Wright, Plant Supervisor, told the welders that the pay of their machinist co-employees had been boosted and the pay of the welders would also be raised if they increased productivity and improved performance. The pay of welders was not changed by April 22, 1980, and events that day led to the firing of Villarreal on the following day.

During the morning of April 22, 1980, Villarreal, concerned that the anticipated pay adjustment had not materialized, took advantage of a slack period at his welding station and walked around and spoke to 12 welders to determine their attitude about joining a union. He testified that 90% responded favorably. Around 1:00 p. m., Villarreal called in the results of this survey to a representative of the Laborers' International Union of North America, Local 1179, AFL–CIO. Villarreal also spoke to several machinists in the adjoining building, at which time his conversation about the union was overheard by a machinist supervisor who told Villarreal that he should not be discussing the union on company time and directed him to leave the machinists' area.

Later in the afternoon Wright called Villarreal aside and spoke to him. The two accounts of their discussion vary [1] but the gist is clear: Villarreal was not to discuss union activities on company time and he was not to leave his work station.[2]

These remarks by Wright were not inappropriate *per se.* For legitimate safety and business reasons, Turner Tool had imposed a rule essentially restricting welders to their work area.[3] Evidence was offered that employees had been dismissed for leaving their duty stations, but it is clear from the record that the rule was honored more in the breach than in the observance.[4] However, the matter does not end here.

During the evening hours of April 22, at a regularly scheduled supervisor's meeting, Villarreal's activities of the day were discussed. Wright instructed the welding and yard foremen that Villarreal was to be fired if he was found away from his work station. Early the next morning, the welding foreman told Villarreal to take care, that he would be fired if he left his welding area. Villarreal testified that his foreman told him that he had been the topic of a discussion at the supervisor's meeting for "pushing" the union and that he should remain in his work area because "They are out to get you." [5]

Around 9:00 a. m., April 23, Villarreal's foreman told him that he had received a personal telephone call and authorized him to return the call when he finished the project at hand. About an hour later, Villarreal went to the field office to make the phone call. As he was completing the conversation, the yard foreman entered the office. At this point the testimony of the two participants diverges.

The yard foreman testified that he had warned Villarreal repeatedly to stay away

1. The ALJ footnoted that "Villarreal favorably impressed me with his candid and forthright manner of testifying and, based in part on his demeanor, I credit his testimony in all significant respects."

2. Wright admitted to saying, "What in the devil he thought he was doing out here talking about the union on company time . . . ."

3. The rule reads: "STAY IN YOUR WELDING AREA EXCEPT TO GO TO THE RESTROOM, COKE MACHINES, OR TO GET WELDING SUPPLIES."

4. The record reflects that the dismissed employees had done more than occasionally leave their work stations. Evidence established that many employees routinely walked around and visited without suffering the ultimate discipline of discharge.

5. The welding foreman did not recall using these exact words, but he did recall conveying to Villarreal in "strong terms" the precariousness of his position.

from the field office and to remain at his duty station. He further testified that in making his routine rounds that morning he noticed Villarreal was not at his work station and then found him in the office using the telephone. The yard foreman testified that he asked Villarreal how many times he had been told to stay at his work place. Villarreal made no response; he was fired.

Villarreal testified that the yard foreman walked in as he was concluding the telephone conversation, ignored an inquiry Villarreal made about a former company employee, and asked Villarreal if he was "talking union yesterday on company time." When Villarreal responded affirmatively, the yard foreman fired him. Villarreal was directed to leave the premises without delay; the yard foreman told Villarreal that he would "punch out" his time card.

We are in full accord with the ALJ's crediting of Villarreal's version of the events. If indeed the incident occurred as recounted by the yard foreman, and Villarreal was told he was being fired for leaving his post and using the telephone, Villarreal likely would have mentioned that he had permission or he would have sought out his immediate foreman. In light of the entire record, the account as given by the yard foreman is incredible.[6]

The ALJ found: (1) the General Counsel had made a prima facie case that Villarreal's union activities precipitated his discharge; (2) Turner Tool's explanation for the firing—violation of the company rule

requiring employees to remain at their work stations—was pretextual and not the motivating cause;[7] and (3) Turner Tool's post-complaint offer to rehire Villarreal was not curative. The Board adopted the ALJ's findings and recommendations as presented.

Turner Tool's principal argument on appeal is premised on the correct assertion that an employer may fashion and enforce legitimate work rules—including a rule which, for reasons of safety and employee performance, requires an employee to remain primarily at the work station assigned. Turner Tool contends it is entitled to discharge an employee who violates this rule and argues that the ALJ and the Board erred in concluding that its explanation for Villarreal's dismissal was pretextual.

■ There should be scant need to remind that our appellate function is limited. We are to accept the factual findings by the ALJ and the Board if they are supported by substantial evidence in the record considered as a whole. 29 U.S.C. § 160(e). *See Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Pioneer Natural Gas Co. v. N. L. R. B.,* 662 F.2d 408 (5th Cir. 1981); *TRW, Inc. v. N. L. R. B.,* 654 F.2d 307 (5th Cir. 1981); *Delco-Remy Div., General Motors Corp. v. N. L. R. B.,* 596 F.2d 1295 (5th Cir. 1979).[8] Since the factual bases for the determination that sections 8(a)(1) and 8(a)(3) were violated are supported by substantial evidence,[9] we limit our consideration to deter-

---

**6.** A few minutes later the yard foreman told the welding foreman about the dismissal and learned that Villarreal had been given permission to leave his post and use the telephone. Wright learned of the incident later that day. Instead of correcting the matter, Wright remarked that if Villarreal "did not care any more about a job that he couldn't argue in his own self-defense, well, to heck with him." Wright conceded that his choice of language might have been a "little more flowery."

**7.** The ALJ recognized that Turner Tool may adopt and enforce appropriate work rules. "However, [Turner Tool] cannot selectively enforce them, as here, based upon unlawful considerations."

**8.** If the Board has not made an essential finding, we may sustain its order nonetheless, if the record supports the existence of the omitted finding. *Pioneer Natural Gas Co. v. N. L. R. B.,* 662 F.2d 408 (5th Cir. 1981). If the record is unclear concerning the existence of an omitted necessary finding we may remand for further proceedings; but if "the record clearly provides no support for the necessary finding, we may deny enforcement without resort to remand." *Id.* at 411 (citation omitted).

**9.** We noted recently, "Recognizing the Board's expertise in labor law, we will defer to plausible inferences it draws from the evidence, even if we might reach a contrary result were we deciding the case *de novo*." *TRW, Inc. v. N. L. R. B.,* 654 F.2d 307, 310 (5th Cir. 1981) (*citing*

mining (1) whether Villarreal was engaged in protected concerted activity [10] when he left his work area and inquired about the union feelings of other employees, (2) whether the Board correctly rejected as pretextual Turner Tool's contention that Villarreal was discharged for leaving his work station, and (3) whether the remedial order, if it is to be enforced, should be modified.

■ The landmark decision in *N. L. R. B. v. Babcock & Wilcox Co.*, 351 U.S. 105, 113, 76 S.Ct. 679, 684, 100 L.Ed. 975, 983 (1956) (*citing Republic Aviation Corp. v. N. L. R. B.*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945)), prescribes that "no restriction may be placed on the employees' right to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to maintain production or discipline." Company regulations limiting or prohibiting organizational talk during on-duty time, designed to boost productivity and increase job-site safety, generally are legitimate and enforceable. However, an employer's rules against solicitation must be applied in a non-discriminatory manner. *See Essex Internat'l, Inc.*, 211 N.L.R.B. 749, 86 LRRM 1411 (1974); *Peyton Packing Co.*, 49 N.L.R.B. 828, 12 LRRM 183 (1943).

In the present case, it is beyond serious question that Turner Tool's rule against employees leaving their work areas was enforced only sporadically. Indeed, the evidence reflects that the violations were so frequent that the company policy was "more honored in the breach than in the enforcement." Moreover, it was determined that the real reason for Villarreal's discharge was his union organizational activities, not that he had left his duty station. The Board found pretextual the employer's citation of its work policy as the justification for Villarreal's termination.

This factual finding is supported by substantial evidence in the record; however, the manner in which the ALJ and the Board treated the legal effects of this finding requires a brief comment.

In *TRW, Inc. v. N. L. R. B.*, 654 F.2d 307, 311 (5th Cir. 1981), in examining the employer's explanation for a discharge, we observed that the "very nature of a 'pretext' is a false or sham reason." We noted that "when the employer advances a legitimate reason for the discharge, and it is not shown that this reason is untrue, the case cannot be characterized as a pretext case but must be considered a 'dual-motive' case." *Id.* at 311–12 (footnote omitted). Since the Board found that Turner Tool had a rule forbidding employees from leaving their work areas, it might appear, upon initial impression, that the company advanced a legitimate business reason for Villarreal's firing, thereby precluding the labeling of the cause of his discharge as a pretext. This impression fades upon closer examination.

■ Reading the ALJ's findings and recommendations against the backdrop of the evidence leads us to conclude that the pretext language was employed to signal a finding of anti-union animus as the moving cause for Villarreal's termination. We noted the plausibility of such a reading of pretext in the *TRW* case, 654 F.2d at 312, but therein declined to follow that reasoning because the evidence did not support such a finding. The present case, however, markedly differs. The ALJ found that Turner Tool's supervisors threatened Villarreal with discharge if he talked of organization with other employees, a right secured to Villarreal by section 7 of the Labor Management Relations Act, 29 U.S.C. § 157. This conduct constituted a section 8(a)(1) violation.[11] The finding that Villarreal was

---

*N. L. R. B. v. United Ins. Co.*, 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968); *Sturgis Newport Bus. Forms, Inc. v. N. L. R. B.*, 563 F.2d 1252 (5th Cir. 1977)).

**10.** *See* 29 U.S.C. § 157.

**11.** *See e.g., TRW-United Greenfield Div. v. N. L. R. B.*, 637 F.2d 410 (5th Cir. 1981); *N. L. R. B. v. Pope Maintenance Corp.*, 573 F.2d 898 (5th Cir. 1978); *N. L. R. B. v. Standard Forge and Axle Co., Inc.*, 420 F.2d 508 (5th Cir. 1969), *cert. denied*, 400 U.S. 903, 91 S.Ct. 140, 27 L.Ed.2d 140 (1970).

fired for talking about the union and not for leaving his work site, a section 8(a)(3) violation,[12] is supported by substantial evidence. Considering the entirety of the record, we are persuaded that the coercive statements and the firing of Villarreal were motivated by anti-union animus. *See N. L. R. B. v. Walton Mfg. Co.*, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); *N. L. R. B. v. Sencore, Inc.*, 558 F.2d 433 (8th Cir. 1977).

■ Turner Tool is correct in one of its contentions. The order and corresponding notice issued by the Board are overbroad. The order prohibits Turner Tool from "Unlawfully threatening employees with discharge if they are caught out of their work area." The notice required to be posted states that Turner Tool "WILL NOT unlawfully threaten to discharge you if you are caught out of your work area." Because the order and accompanying notice specifically prohibit Turner Tool from making threats or discharging employees on the basis of union or organizational talk, sentiment, or activity, this element of the Board's order and notice is unnecessary. Further, since the Board recognizes that the rule stating "STAY IN YOUR WELDING AREA EXCEPT TO GO TO THE REST-ROOM, COKE MACHINES, OR TO GET WELDING SUPPLIES" can be enforced validly, these portions of the order and notice are deleted as an inappropriate infringement on the employer's prerogatives.

ENFORCED as MODIFIED.

12. *See, e.g., Merchants Truck Line, Inc. v. N. L. R. B.*, 577 F.2d 1011 (5th Cir. 1978); *N. L. R. B. v. Florida Medical Center, Inc.*, 576 F.2d 666 (5th Cir. 1978); *N. L. R. B. v. Hudson Pulp and Paper Co.*, 273 F.2d 660 (5th Cir. 1960).