NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DELTA GAS, INC., A SUBSIDIARY OF
LOUISIANA ENERGY AND DEVEL-
OPMENT CORPORATION, Respon-
dent.

No. 87–4473.

United States Court of Appeals,
Fifth Circuit.

March 23, 1988.

William Baudler, Aileen Armstrong, Deputy Associate General Counsel, N.L.R.B., Susan Williams, Atty., Harriet Lipkin, Washington, D.C., for petitioner.

Frederick S. Kullman, Sidney F. Lewis, New Orleans, La., for respondent.

Before CLARK, Chief Judge, REAVLEY, Circuit Judge, and HUNTER,[*] District Judge.

EDWIN F. HUNTER, Jr., District Judge:

The National Labor Relations Board (the "Board") petitions for enforcement of its order, 283 NLRB No. 62, which found that Delta Gas, Inc. engaged in unfair labor practices in violation of the National Labor Relations Act. Delta Gas cross-petitions this Court to review and set aside the Board's order.

Delta Gas is engaged in the transportation and distribution of natural gas and maintains a facility at Homeplace, Louisiana. In June 1985, twelve Delta employees at the Homeplace facility, including Mervin Riley and J.C. Ragas, filed a Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, suit alleging that Delta withheld earned overtime pay. During the summer of 1985, the Oil, Chemical & Atomic Workers International Union and its local began a campaign to organize Delta's Homeplace facility. Riley and Ragas signed union authorization cards and attended union meetings. Ragas allowed the union to hold meetings in his garage. In September 1985, the Board conducted an unfair labor practice hearing involving Delta. At this hearing, Riley, Ragas, and Delta supervisor August Mackey testified that Delta vice-president Ed Daigle had threatened to close the Homeplace facility rather than let the union organize.

In October, 1985, the General Counsel filed an unfair labor practice complaint alleging that Delta management unlawfully: threatened employees Mackey and Ragas that they had been denied a pay increase, and would be denied future pay increases, because of their union or protected activities; denied wage increases to Ragas, Riley and supervisory employee Mackey, because of union or protected activities; and discharged Riley in retaliation for his union activities.

The Board found that: Mackey and Ragas were threatened because of their participation in protected activities in violation of Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1); Ragas and Riley were denied wage increases and Riley's employment was terminated in retaliation for their protected activities in violation of Section 8(a)(1), (3), and (4), 29 U.S.C. § 158(a)(1), (3), and (4); and, supervisory employee Mackey was denied a wage increase because he testified at the previous unfair labor practice hearing in violation of Section 8(a)(4). The Board ordered that the employees be made whole for their loss of earnings and that Riley be reinstated.

Delta Gas cross-petitions this Court to review and set aside the Board's order. Delta contends that the Board's order is not supported by the record. This Court's authority to review a Board order is narrowly limited. The Board's findings must be sustained if they are supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488–91, 71 S.Ct. 456, 465–66, 95 L.Ed. 456 (1951). A court may not displace the "Board's choice between two fairly conflicting views [of the evidence], even though the court would justifiably have made a different choice had the matter been before it de novo." 340 U.S. at 488, 71 S.Ct. at 465.

*Section 8(a)(1) Violations*

Section 7 of the Act, 29 U.S.C. § 157, declares that "[e]mployees shall have the

[*] District Judge of the Western District of Louisiana sitting by designation.

right to self-organization, to form, join or assist labor organizations, to bargain collectively ... and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." Section 8(a)(1) states that it is unfair labor practice to interfere with, restrain or coerce employees from the free exercise of their Section 7 rights. An unlawful threat is established under Section 8(a)(1), if under the totality of the circumstances, an employee could reasonably conclude that the employer is threatening economic reprisals if the employee supports the union. *NLRB v. Brookwood Furniture, Division of U.S. Industries*, 701 F.2d 452, 459 (5th Cir.1983). Section 8(a)(1) is also violated where an employer threatens retaliation if an employee testifies at a Board hearing. *See NLRB v. Trailways, Inc.*, 729 F.2d 1013, 1023 (5th Cir.1984).

August Mackey and J.C. Ragas testified that on November 1, 1985, Delta supervisor Lawrence Williams told them they did not receive a raise because of their participation in the union and because they had sued Delta for back wages. Williams denied making such a statement. The ALJ credited the testimony of Mackey and Ragas.

Mackey and Ragas also testified that on March 4, 1986, Delta vice-president Ed Daigle told Mackey and Ragas they could not be given a raise because they had filed an unfair labor practice charge against Delta. Daigle denied making this statement, and testified that he merely told Mackey and Ragas that the question of a raise was already tied up in an unfair labor practice proceeding. The ALJ credited the testimony of Mackey and Ragas. The Board found that Williams' statement of November 1 and Daigle's statement of March 4 were violations of Section 8(a)(1).

Delta contends that the testimony of Daigle and Williams should be credited, rather than the testimony of Mackey and Ragas. Delta argues that because Mackey and Ragas testified similarly this indicates that their testimony was collusive.

■ It is well settled that the credibility determinations of the ALJ are " 'entitled to

affirmance unless [they are] inherently unreasonable or self-contradictory.' " *NLRB v. National Fixtures, Inc.*, 574 F.2d 1305, 1306 (5th Cir.1978) (citation omitted). This Court defers to the ALJ's credibility determination that the similarity between Mackey's and Ragas' testimony is corroborative rather than collusive. Crediting Mackey's and Ragas' accounts of the November 1 and March 4 statements, a reasonable person could conclude that they had been threatened with economic reprisals for their support of the union and for taking part in the unfair labor practice proceeding.

### Section 8(a)(3) & (4) Violations

Section 8(a)(3) prohibits an employer from retaliating against an employee for engaging in union or other protected activities. *See NLRB v. Associated Milk Producers, Inc.*, 711 F.2d 627, 629–30 (5th Cir. 1983). To prove a Section 8(a)(3) violation, the evidence must support a reasonable inference that the employer's adverse action was motivated by anti-union animus. *See Brookwood Furniture*, 701 F.2d at 464. Section 8(a)(4) prohibits an employer from retaliating against an employee for giving testimony at Board proceedings. *NLRB v. Scrivener*, 405 U.S. 117, 124–25, 92 S.Ct. 798, 802–03, 31 L.Ed.2d 79 (1972). Section 8(a)(4) also protects supervisors from retaliation by employers for giving testimony in Board proceedings. *NLRB v. Dal–Tex Optical Co.*, 310 F.2d 58, 62 (5th Cir.1962). Where an employee's protected activity is shown to be a motivating factor in the employer's decision to take adverse action against the employee, that adverse action constitutes an unfair labor practice, unless the employer affirmatively demonstrates that the adverse action would have taken place notwithstanding the employee's protected activity. *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401–03, 103 S.Ct. 2469, 2474–75, 76 L.Ed.2d 667 (1983) (*approving* Wright Line, a Division of Wright Line, Inc., 251 NLRB 1083, 1089 (1980), *enf'd on other grounds*, 662 F.2d 899 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982)).

■ The Board found that Delta violated Section 8(a)(3) and (4) by denying Mackey, Ragas, and Mervin Riley wage increases because of their union activities and/or because they gave testimony in a prior unfair labor practice hearing. The Board's finding is supported by substantial evidence.

The ALJ found and the record shows that Mackey, Ragas, and Riley were involved in protected activities. All three men wore union buttons, testified against Delta in a prior unfair labor practice hearing, and were plaintiffs in the FLSA overtime suit against Delta. Riley was instrumental in organizing the overtime suit. Riley and Ragas were named plaintiffs in the FLSA suit. Ragas allowed the union to hold meetings at his house. Ragas and Mackey spoke in favor of the union at company meetings. The evidence is largely undisputed that the Company was actively hostile towards the union's organization efforts.

Delta argues that Mackey, Ragas and Riley were denied raises because they received poor ratings on their performance review by Ed Daigle. However, the record shows that Daigle spent little time at the Homeplace facility where Mackey, Ragas and Riley were employed. He did not have an opportunity to routinely observe their work. The Delta Homeplace facility supervisor, Lawrence Williams was not consulted and did not participate in the employee evaluations though Williams had been consulted on previous evaluations. Daigle testified that he was generally dissatisfied with the work of the three men, however, he could recall only a few instances of poor performance and the three men offered uncontradicted innocent explanations which the ALJ credited for their poor performance on those occasions. Daigle testified that poor work performance was generally documented, however there was no documentation of specific instances of poor work on the part of Ragas, Mackey, or Riley.

Before the union activities and the unfair labor practice hearing all three men were considered good workers and had never been reprimanded. Lawrence Williams said Mackey was a good employee and was unable to recall any specific instances of poor performance on his part. Supervisor Ragas testified that Riley was a good employee. Moreover, as previously discussed, the ALJ found that on March 4, 1986 vice-president Daigle told Mackey and Ragas they would not be given a raise because they filed an unfair labor practice claim against Delta. Delta gave raises to all employees who did not join in the FLSA overtime suit against Delta.

The Board's determination that Daigle considered Ragas', Mackey's and Riley's protected activities in the employee review process is supported by the record, and Delta has failed to show that the three men would not otherwise have received raises.

■ Delta contends that the Board's finding is not supported by the record because the record shows that other Delta employees who wore union buttons or participated in the back pay suit did receive raises. Delta's argument focuses on individual facts rather than the union activities of the other employees as a whole. The Board found and the record shows that Ragas, Mackey and Riley were prominently involved in union activities. The fact that other Delta employees may have worn union buttons or participated in the back pay suit does not undermine the Board's finding.

Delta next contends that the Board's finding that Mervin Riley was discharged for his protected activities is not supported by the record. On October 17, 1985, Delta vice-president Ed Daigle told Riley his employment was terminated for driving company vehicles without a valid driver's license. The record clearly demonstrates that Riley was involved in filing the FLSA action, that he gave testimony against the Company before the Board, that he openly supported the union and that the Company knew of these protected activities. Shortly after these activities, Daigle learned that Riley had an expired driver's license. Despite Riley's protest and supervisor Williams' confirmation that Riley had obtained a valid driver's license, the discharge was not rescinded. The Board found that

the purported basis for Riley's discharge was pretextual and that Riley was terminated for his protected activities in violation of Section 8(a)(1), (3), and (4).

In *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 398, 103 S.Ct. 2469, 2472, 76 L.Ed.2d 667 (1983), the Supreme Court stated that an employer commits an unfair labor practice by discharging an employee for engaging in 29 U.S.C. § 157 concerted activities if the employer "has no other basis for the discharge, or if the reasons that [the employer] proffers are pretextual." Once the Company asserted that it laid off Riley for legitimate reasons, the NLRB had the burden to make a prima facie showing sufficient to support the inference that protected conduct was a "motivating factor" in the employer's decision. Since an employer rarely admits that it discharged an employee for engaging in protected concerted activities, the NLRB may rely on circumstantial evidence in determining an employer's actual motive.

Once the NLRB has established a prima facie case, the Company has to rebut the prima facie case by showing that the Company would have discharged Riley absent the protected activity. *NLRB v. Transportation Management Corp.*, 462 U.S. at 401, 103 S.Ct. at 2474.

In November 1984, Riley's drivers license expired; he had simply neglected to have it renewed. He did apply for and promptly received a new license on October 11, 1985. It is not clear from the record how often Riley drove Delta vehicles without a valid license. However, it is undisputed that he drove a company vehicle without a valid license on at least one occasion in January 1985, and shortly before his discharge Riley drove a Delta vehicle on a daily basis without a valid license.

The record does not show that Delta had a written progressive disciplinary policy. Delta vice-president Daigle testified that employees were generally given warnings concerning disciplinary infractions, however the disciplinary action taken depended on the seriousness of the disciplinary infraction. The record does, however, show

that Riley's immediate discharge was contrary to Delta's normal practices.

The record shows that Delta employee Dwight Bartholomew was involved in an accident while driving a company vehicle when he ran a red light. The accident resulted in extensive damage to the Delta vehicle. Bartholomew was not fired or disciplined for this accident. Delta management merely talked to Bartholomew about his poor driving and assigned him new temporary duties that did not require driving a vehicle. The record also shows that Delta employee Raymond Antoine was dismissed for "gross negligence" in caring for a company vehicle; however, Antoine was repeatedly warned concerning his poor work performance before he was dismissed. Antoine's dismissal is the only other case of the firing of a Delta employee on this record.

■ Delta utilized lesser sanctions in dealing with the disciplinary infractions and violations of company policy by other employees. There is no evidence that the Company even considered the use of lesser sanctions in Riley's case. On the contrary, it swiftly concluded to invoke the "last resort", after only a cursory investigation. The Board's finding that Riley's dismissal for driving without a license was pretextual is "supported by substantial evidence on the record considered as a whole". 29 U.S.C. § 160(f).

■ Delta urges that even if Riley was unlawfully discharged, the Board's order should be denied enforcement because vice-president Daigle testified that he would not have hired Riley if he had known of Riley's criminal record. Delta argues that Riley's criminal record provides a legitimate non-discriminatory basis for Riley's discharge. The record reveals and the ALJ found, however, that on his employment application Riley acknowledged that he had been convicted of the assault. Delta supervisor Lawrence Williams acknowledged that he knew Riley had spent time in jail before he was hired.

## CONCLUSION

For the foregoing reasons, we grant the Board's petition for enforcement of its order in its entirety.

**ENFORCEMENT GRANTED**