Revised February 11, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-60653
_____


NEW ORLEANS COLD STORAGE & WAREHOUSE CO., LTD.,

Petitioner-Cross-Respondent,

-vs-

NATIONAL LABOR RELATIONS BOARD,

Respondent-Cross-Petitioner.

_____

Petition for Review & Cross Petition For Enforcement
of an Order of the National Labor Relations Board
_____

January 24, 2000

Before POLITZ and STEWART, Circuit Judges, and LITTLE, District Judge.[*]

LITTLE, District Judge:

    This case was brought by New Orleans Cold Storage & Warehouse Co., Ltd. ("NOCS") to

overrule the National Labor Relation Board's ("the Board") determination that NOCS violated

Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("the Act"). For the following

reasons, we AFFIRM.

_____

[*] District Judge of the Western District of Louisiana, sitting by designation.

I.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

NOCS operates storage warehouses for chilled and frozen cargo in several cities in the United States. Nelson Pierre, the charging party in this matter, began working at NOCS' New Orleans Nashville Avenue location in 1982. When he joined NOCS, Pierre worked as a lift driver in the freezer. In 1983, he moved to a position on the dock. In 1986, Pierre transferred once more to the chill rooms. While in this position, Pierre received three warnings, one for tardiness, one for mishandling an order, and another for missing four and a half days of work. In June 1992, while still employed in the chill rooms, Pierre filed a grievance with Local Teamsters Union No. 270 ("the union") over a warning he had received for allegedly mishandling the produce order.

Pierre again changed jobs in April 1993, becoming a warehouse porter. On 28 December 1993, Pierre filed a grievance with the union asserting that NOCS had not paid him for overtime work he had done over the past four months. Also on 28 December, NOCS informed Pierre that his work schedule would change from noon to 8 p.m., to 2:00 a.m. to 10:00 a.m., because of congestion on the docks. Pierre then filed another grievance protesting his change in hours and requesting to be reassigned to the produce department. This request was denied. On 1 February 1994, NOCS issued a warning and suspended Pierre for missing a day of work. Pierre filed two grievances with the union on that day asserting that there was a reasonable explanation for his one-day absence and therefore the warning and suspension were not warranted. Pierre was ultimately discharged from his position

2

as a checker/lift operator ("CLT")[1] porter on 8 February 1994. Pierre filed an unfair labor practice charge and grievance seeking reinstatement shortly thereafter. The matter was then submitted to an arbitrator pursuant to the collective bargaining agreement between NOCS and the union.

The arbitrator ruled that Pierre's discharge should be converted to a suspension and ordered Pierre be returned to employment without any loss of seniority. Union Business Agent Robert Louis ("Louis") then contacted Gary Escoffier ("Escoffier"), NOCS' Chief Executive Officer, to discuss Pierre's reinstatement. Escoffier told Louis that Pierre would be reassigned to the freezer so Escoffier could "keep an eye" on him. Pierre protested his reassignment to the freezer when Louis notified him that he had been assigned to a position as freezer CLT because of the health problems he had experienced while working in the freezer in 1982.[2] Louis again spoke with Escoffier about finding another position for Pierre, but Escoffier insisted that Pierre return to the freezer. Louis advised Pierre that he had been given an ultimatum either to work in the freezer or remain at home and therefore his best course of action was to accept this position and file a grievance with the union. Pierre returned to work and filed a grievance.

Once back at work on 11 July 1994, Pierre asked Rickey Calligan ("Calligan"), the warehouse manager, why he was not reinstated to his prior position. The manager informed Pierre that he was not given his old job back because Escoffier had decided he was filing too many grievances. Upon his reinstatement, Pierre began receiving oral and written warnings for various alleged transgressions.

---

[1] Prior to 1985, NOCS divided its employees into several job categories with different rates of pay, including warehousemen, checkers, and lift truck drivers. In 1985, pursuant to a collective bargaining agreement, NOCS dispensed with the separate classifications and the Union agreed that all workers would be classified as checker/lift operators ("CLTs").

[2] While working in the freezer in 1983, Pierre experienced physical problems including diarrhea, excessive sweating, and nausea.

First, on 15 July 1994, Calligan warned Pierre orally and in writing about a mistake he made on a receiving tally. This oral warning was a departure from routine company policy that allows CLTs to correct tally's themselves, or after being advised by a company secretary who catches tally discrepancies. Further, normally CLTs are only given warnings for mistakes that cause monetary loss. On 8 August, Calligan filed a written warning after purportedly Pierre took too long to unload an order, even though Pierre apparently was legitimately delayed in completing his job. Calligan attached a receiving record with two time stamps reflecting the time Pierre had been given the unload order, and the time he finished the job. The ALJ found that time stamping also was not typical company practice.[3] The ALJ also found that Pierre never received notice of this warning. Again on 10 August, Calligan wrote two warnings to Pierre, one for failing to fill in the number of pallets used in shipping an order, and another for allowing a driver from another company to take pallets without paying for them. Pierre also received a warning on that day for taking too long to unload a container.

NOCS held a step-one grievance meeting regarding the grievance Pierre had filed on 11 July protesting his reinstatement to the freezer. Escoffier told Pierre that the arbitrator only reinstated him because he felt sorry for him and again told Pierre that he was writing too many grievances. Pierre responded that he would stop filing grievances if NOCS would stop issuing warnings to him. Finally on 31 August 1994, NOCS terminated Pierre, referring generally to his numerous warnings and a "history of poor workmanship." Pierre filed another grievance upon termination.

---

[3] The ALJ determined that NOCS normally did not time stamp the receiving records, and only did so in Pierre's case because of his grievance writing.

This case came before the Board upon filing of an unfair labor practice complaint by the General Counsel of the Board, following an investigation of unfair labor practice charges filed by Pierre. On 21 December 1994, the Acting Regional Director for Region 15 issued an order to show cause why the issue concerning the position to which Pierre should have been reinstated should not be resubmitted to the arbitrator. The arbitrator issued a supplemental decision on 31 July 1995 finding that it was beyond his power to reinstate Pierre to any one position, since NOCS had only one job category, that of CLT, and there was no classification of "porter."[4]

On 25 October 1994, Pierre filed a charge against NOCS alleging that NOCS discharged him in retaliation for filing grievances. Pierre filed a first amended complaint on 25 November 1994 repeating the allegations in his original charge and adding that NOCS failed to reinstate Pierre to the position as porter. Finally on 11 September 1996, Pierre filed a second amended charge, contending that NOCS threatened unspecified reprisals against Pierre. NOCS then moved for dismissal of the retaliation charge. NOCS argued that this allegation was time barred by Section 10(b) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 160(b)(1994), because Pierre did not set forth the charge alleging violation of Section 8 of the Act, 29 U.S.C. § 158(a)(1),(3) (1994), until 11 September 1996. After a full hearing, the administrative law judge ("ALJ") issued a decision and recommended order denying NOCS' motion to dismiss and finding that NOCS had violated Sections 8(a)(1) and 8(a)(3) of the Act. The ALJ also rejected NOCS' argument that any of Pierre's charges are time barred by Section 10(b). The Board affirmed the ALJ's finding.

---

[4] Based on the 1985 agreement between the union and NOCS reclassifying all workers as CLTs, the arbitrator ruled that NOCS had no separate job of porter, and he could therefore not reinstate Pierre to such a position because it did not exist.

## II.

## STANDARD OF REVIEW

This court must uphold the Board's decision if it is reasonable and supported by substantial evidence. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L.Ed. 456 (1951); NLRB v. Thermon Heat Tracing Servs., 143 F.3d 181, 185 (5th Cir. 1998); Trencor, Inc. v. NLRB, 110 F.3d 268, 269 (5th Cir. 1997). The Board's decision is supported by substantial evidence if it is based on "such relevant evidence as a reasonable mind would accept to support a conclusion." Universal Camera, 340 U.S. at 477, 71 S.Ct. at 459; Thermon Heat Tracing Serv., 143 F.3d at 185.

### A. The Board's Decision not to Defer to Arbitrator

NOCS argues that the Board erred by refusing to defer to the arbitrator's supplemental decision concluding that he was without the power to reinstate Pierre to any one position at the company because NOCS had only one job classification - that of CLT. This court reviews the Board's decision not to defer to an arbitrator only for abuse of discretion. See NLRB v. Ryder/P.I.E. Nationwide Inc., 810 F.2d 502, 506 (5th Cir. 1987). In deciding whether deferral is appropriate, this court applies the four-part test set forth in Spielberg Manufacturing Co., 112 NLRB 1080, 1082 (1955). The Board will defer to the arbitrator's decision if the arbitration proceeding was fair and regular, all parties agreed to be bound, the arbitration decision was not clearly repugnant to the purposes and policies of the Board, and the arbitrator considered the unfair labor practice issue. See id.; see also NLRB v. Magna Corp., 734 F.2d 1057, 1063 (5th Cir. 1984)(applying Spielberg). The

6

arbitrator is deemed to have considered the unfair labor practice issue if: "(1) the contractual issue is factually parallel to the unfair labor practice issue and (2) the arbitrator was presented generally with the facts relevant to resolving the unfair labor practice issue." Ryder/P.I.E. Nationwide, 810 F.2d at 506 (citing Olin Corp., 268 N.L.R.B. 573, 574 (1984)).

The ALJ was correct in noting that the arbitrator's award did not address the same question as that before the Board -- whether Pierre was discriminatorily reinstated because he engaged in activity protected under Section 7 of the Act. 29 U.S.C. § 157 (1994).[5] The only issue before the arbitrator was whether Pierre should be reinstated after his discharge in February 1994 and whether the collective bargaining agreement required NOCS to assign Pierre to specific duties. The arbitrator did not consider whether Pierre was discriminatorily reinstated and later discharged in retaliation for his grievance writing activity in violation of Section 8(a)(1) and 8(a)(3), the main issues before the Board, and therefore did not meet the fourth prong of the Spielberg test. See Ryder/P.I.E. Nationwide, 810 F.2d at 506 (finding that the Board's refusal to defer to arbitrator was proper in case where arbitrator considered whether discharge was proper under the collective bargaining agreement whereas the Board dealt with the issue of whether employee was discharged for grievance filing activity). Accordingly, we find that the Board did not abuse its discretion in refusing to defer to the arbitrator's decision regarding Pierre's reinstatement.

### B. Section 8(a)(1) Violation

---

[5] Under Section 7 of the National Labor Relations Act, employees have "the right to self-organization, to form, join or assist labor organizations . . . and or engage in . . . concerted activities for the purpose of collective bargaining or other mutual air or protection . . . ."

Under Section 8(a)(1) of the Act, an employer may not "interfere with, restrain, or coerce an employee in the exercise" of his Section 7 rights. 29 U.S.C. § 158 (a)(1). NOCS challenges the Board's finding that it violated Section 8(a)(1) by threatening employees who file grievances on two separate grounds. First, NOCS contends that the Board erred in affirming the ALJ's determination that Pierre's second amended charge was timely filed. Section 10(b) of the Act prohibits the Board from considering charges based on facts that occurred more than six months prior to the time of filing. 29 U.S.C. § 160(b). A charging party may file an amended charge, but such charges are considered untimely unless the amended charge is closely related to the allegations in the timely-filed charge. See Texas World Serv. Co. v. NLRB, 928 F.2d 1426, 1436-37 (5th Cir. 1991); NLRB v. International Union of Operating Eng'rs, 460 F.2d 589, 596 (5th Cir. 1972).

To determine whether an allegation is closely related to a timely filed charge, the complaint "'need be close enough only to negate the possibility that the Board is proceeding on its own initiative rather than pursuant to a charge... .'" Texas World Serv., 928 F.2d at 1437 (citing NLRB v. Central Power & Light Co., 425 F.2d 1318, 1321 n. 3 (5th Cir.1970)).[6] In this case, Pierre filed the initial charge with the Board in October 1994, shortly after being discharged. The initial charge alleges that NOCS discriminated against him as a result of his grievance filing activity. The first amended charge, filed on 25 November 1994, alleges that NOCS failed to reinstate Pierre as porter because he was filing too many grievances. The second amended charge, although not filed until 11 September 1994,

<hr />

[6] NOCS argues that we should use the Redd-I three-step analysis in order to determine whether the amended charge is closely related to the timely filed charge. See Redd-I, Inc., 290 NLRB 1115 (1988). The Redd-I test is, however, "a more rigorous enquiry than the law of this Circuit demands." See Texas World Serv., Co. v. NLRB, 928 F.2d 1426, 1437 n. 10 (5th Cir. 1991).

also contends that Pierre was threatened as a result of filing grievances. There is no question that the second amended charge arises out of the same course of conduct as the two timely-filed charges; that is, Pierre's frequent grievance filing. We conclude that the Board reasonably found that Pierre's second amended charge, alleging that NOCS' manager unlawfully threatened to retaliate against Pierre in violation of Section 8(a)(1), was sufficiently related to the allegations in the two timely filed charges of unlawful discrimination. We therefore treat the second amended charge as relating back to the timely filed charges and consider those allegations in reaching our decision in this case.

In the alternative, NOCS asserts that even if the second amended charge was timely filed, it still did not violate Section 8(a)(1). Under Section 8(a)(1), it is illegal to threaten an employee who engages in a protected activity. The basic thrust of the ALJ's finding is that by not reinstating Pierre to his former position because he was filing too many grievances, NOCS threatened employees who dared to file grievances by suggesting that any employee who did report NOCS to the union would be moved to a less desirable job. NOCS claims that the ALJ improperly credited Pierre's testimony that Calligan had threatened employees with unspecified reprisals. We must give great deference to the ALJ's credibility determinations. See NLRB v. Delta Gas, Inc., 840 F.2d 309, 311 (5th Cir. 1988) (noting that the Board's credibility determinations are entitled to deference unless "inherently unreasonable or self-contradictory"); NLRB v. Laredo Packing Co., 730 F.2d 405, 408 (5th Cir. 1984). When Pierre asked Calligan why he had been reinstated to the freezer, Calligan remarked that his assignment to the freezer was due to his frequent grievance writing. The ALJ had the opportunity to view and question witnesses, and we therefore give credence to his conclusion that NOCS threatened unspecified reprisals against its employees when Calligan informed Pierre that he could

9

not get his porter job back because he was filing to many grievances. Escoffier's statement to Pierre on 16 August 1994 that "he didn't win anything" and that he was "writing too many grievances" also tends to support the ALJ's finding that NOCS' threatened unspecified reprisals against Pierre.

Alternatively, NOCS argues that this statement does not rise to the level of an actionable threat because NOCS was under a binding order to reinstate Pierre and therefore had no authority to refuse to reinstate him. Again, this court must affirm the Board's decision that an employer's actions violate Section 8(a)(1) if there is substantial evidence taken on the record as a whole supporting the Board's finding. See NRLB v. Great Western Coca Cola Bottling Co., 740 F.2d 398, 404 (5th Cir. 1984). Contrary to NOCS' contention that no reasonable employee would believe that NOCS would carry out any threat because of the binding nature of the arbitrator's ruling, we agree with the Board that once confronted by the statement that his grievance filing had caused him to be relegated to an undesirable position, any reasonable employee might infer that such behavior was being threatened, punished, and discouraged. See Selkirk Metalbestos, North America, Eljer Mfg., Inc. v. NLRB, 116 F.3d 782, 788 (5th Cir. 1997) (citing NLRB v. Brookwood Furniture, Div. of U.S. Indus., 701 F.2d 452, 459 (5th Cir. 1983))("An unlawful threat is established if, under the totality of the circumstances, an employee could reasonably conclude that the employer is threatening economic reprisals if the employee supports the union."). We find that it was reasonable for the ALJ and the Board to conclude that Calligan's and Escoffier's separate statements to Pierre that he was filing too many grievances would tend to interfere with the employee's protected right under Section 7 to file grievances as provided under the collective-bargaining agreement regardless of the binding arbitration order requiring NOCS to reinstate Pierre.

10

## C. Section 8(a)(3) Violations

NOCS also asserts that the Board erred in affirming the ALJ's decision that NOCS violated Section 8(a)(3) by reinstating him to a more onerous position and by ultimately terminating him. Section 8(a)(3) of the Act makes it unlawful for an employer to discriminate against employees with respect to terms or tenure of employment for the purpo se of discouraging membership in a labor organization. See Thermon Heat Tracing Servs., 143 F.3d at 186. Section 8(a)(3) also "prohibits an employer from retaliating against an employee for engaging in union or other protected activities." Delta Gas, 840 F.2d at 311. NOCS contends that this court is barred from even hearing this dispute because Pierre failed to comply with the terms of the grievance procedure set forth in the collective bargaining agreement between NOCS and the union.[7] We disagree with this position. Section 10(a) of the Act provides that the Board's power to prohibit unfair labor practices is not "affected by any other means of adjudication that has been established by agreement, law, or otherwise." 29 U.S.C. § 160(a). NOCS' internal grievance procedure therefore has no bearing on the Board's independent decision as to whether NOCS violated Section 8(a)(3) of the Act.

We also affirm the Board's finding that NOCS violated Section 8(a)(3) by discriminatorily reinstating Pierre to the more onerous position as freezer CLT, by issuing warnings to him, and by discharging him in retaliation for his grievance filing activities. In reviewing the Board's decision, we must give great deference to the credibility determinations made by the ALJ and the Board "'even if we might reach a contrary result were we deciding the case de novo.'" Thermon Heat Tracing

---

[7] Specifically, NOCS argues that this issue was resolved at step one of the grievance procedure and Pierre failed to comply with the terms of the two-step internal resolution process before filing a charge with the Board.

11

Servs., 143 F.3d at 185 (quoting NLRB v. Turner Tool & Joint Rebuilders Corp., 670 F.2d 637, 641 (5th Cir. 1982)); see also Ryder/P.I.E. Nationwide, 810 F.2d at 507 (stating that the court must give great deference to the Board's credibility assessment). We conclude that the Board's findings were reasonable in light of the record taken as a whole. Filing grievances pursuant to a collective-bargaining agreement is a protected activity under Section 8(a)(3). See NLRB v. City Disposal Sys., Inc., 465 U.S. 822, 836, 104 S.Ct. 1505, 1513, 79 L.Ed.2d 839 (1984); Ryder/P.I.E. Nationwide, 810 F.2d at 507 n.3. Further, an employer violates Section 8(a)(3) by taking adverse employment action against an employee in retaliation for his union activities or sympathies. See Marshall Durbin Poultry Co. v. NLRB, 39 F.3d 1312, 1318 (5th Cir. 1994). According to the facts as elicited by the ALJ, Calligan and Escoffier both explicitly stated Pierre was put into the freezer position rather than being allowed to return to his old job after the arbitrator reinstated him because he filed too many grievances.[8] It therefore was reasonable for the ALJ and the Board to conclude that NOCS' actions of reinstating Pierre to the more onerous position in the freezer and ultimately discharging him resulted from his frequent grievance writing.

NOCS' assertion that it would have fired Pierre even in the absence of his grievance writing activity because of his poor work performance also is unavailing. We find that the Board's conclusion that NOCS failed to meet the Wright Line burden to show that it would have discharged Pierre even in the absence of his grievance writing activity is supported by substantial evidence. See

---

[8] We agree with the ALJ's characterization of the freezer position as more onerous than the position of porter. The freezer position required frequent exposure to freezing temperatures that necessitated that the employee wear special clothing while working in that position. This was especially true in Pierre's case since he had previously experienced physical problems while working in the freezer. It, therefore, was reasonable for the ALJ to conclude that the freezer position was less desirable than that of porter.

12

Wright Line, a Division of Wright Line, Inc., 251 NLRB 1083 (1980), enf'd 662 F.2d 899 (1st Cir. 1981), cert. denied, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), approved in NLRB v. Transportation Management Corp., 462 U.S. 393, 103 S. Ct. 2469, 76 L.Ed.2d 667 (1983). Under Wright Line, the General Counsel bears the burden of proving that the employee's exercise of a protected activity was a substantial motivating factor in the employer's decision to discipline or discharge the employee. See Wright Line, 251 NLRB at 1089; see also Ryder/P.I.E. Nationwide, 810 F.2d at 507 (applying Wright Line). If the Board succeeds in its burden, the burden shifts to the employer to prove that it would have discharged or disciplined the employee even in the absence of the employee's protected activity. See Thermon Heat Tracing Servs., 143 F.3d at 187 (applying Wright Line).

The Board found, in agreement with the ALJ, that NOCS' purported reason for firing Pierre -- that he was too slow in his duties -- was mere pretext, and therefore NOCS did not sustain its burden under Wright Line. Discharging an employee for reasons that usually are not enforced is a violation of Section 8(a)(3). See, e.g., Marathon LeTourneau Co. v. NLRB, 699 F.2d 248, 252 (5th Cir. 1983)(holding that enforcing a disciplinary rule unevenly violates the Act). The ALJ gave an in-depth factual analysis recounting the ways in which NOCS enforced certain procedures and rules against Pierre, in contrast to typical company procedure. This included time stamping his receiving records and writing a warning for a mistake in pallet tallies contrary to normal company policy that allowed employees to fix mistakes on their own or after being notified by a company secretary. We find that it was reasonable for the Board to conclude that NOCS would not have discharged Pierre had he not exercised his Section 7 right to file grievances against his employer.

13

NOCS failed to carry its burden of proof established under <u>Wright Line</u>.  Accordingly, we enforce the Board's finding that NOCS violated Section 8(a)(3) of the Act.

III.

For the foregoing reasons, we AFFIRM the Board's order requiring NOCS to cease and desist from threatening retaliation against employees who exercise their rights under the collective bargaining agreement and assigning more onerous jobs to employees who exercise such rights.  We also affirm the Board's order mandating that NOCS reinstate Pierre to the position of CLT performing the duties of porter, that the company make Pierre whole for any loss of earnings and other benefits suffered as a result of NOCS' discriminatory actions, and that NOCS remove any negative work performance references associated with this matter from his employee file.[9]  As such, the Board's cross-petition for enforcement is granted and the order is hereby ENFORCED.

AFFIRMED

---

[9] NOCS also asserts that the receiving records relied upon by the ALJ in his determination were inadmissible hearsay evidence. NOCS disputes the application of the 'business records exception" in Fed. R. Ev. 803(6) because no foundation was laid for the receiving records.  Rule 803(6) provides that "'[a]ny person in a position to attest to the authenticity of the records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records.'" <u>Wilson v. Zapata Off-Shore Shoe Co.</u>, 939 F.2d 260, 272 (5th Cir. 1991)(quoting <u>Rosenberg v. Collins</u>, 624 F.2d 659, 665 (5th Cir.1980)).

We reject NOCS' hearsay argument.  At the hearing before the ALJ, Calligan himself testified that Pierre's discharge was due in part to Pierre's mistakes in tallying pallets and his untimely completion of unloading duties as shown in the receiving records.  The "'primary emphasis of rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced.'" <u>United States v. Duncan</u>, 919 F.2d 981, 986 (5th Cir. 1990)(quoting <u>United States v. Veytia-Bravo</u>, 603 F.2d 1187, 1189 (5th Cir.1979)).  It is hard for this court to accept NOCS' argument that the receiving records are not reliable when the company itself wants us to believe that it based its decision to fire Pierre upon the mistakes shown in the records.  We therefore conclude that the ALJ properly considered the receiving records in his determination.