United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 15, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-60319

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

VERSUS

ALBIS PLASTICS,

Respondent.

Application for Enforcement of an Order of the
National Labor Relations Board
(16-A-19615)

Before GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:*

The National Labor Relations Board ("NLRB") seeks enforcement of its decision and order finding various violations of the labor laws on the part of Albis Plastics ("Albis"). The dispute in this case arises from various unrelated infractions committed by Albis during the course of an attempt by United Steelworkers of America ("USW") to organize the employees of Albis in 1998. The election was never held because the USW filed charges with the NLRB. The

---

* Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

ALJ found that Albis had committed unfair labor practices, including violations of section 8(a)(1) for unlawful interrogation of an employee; a violation of Section 8(a)(1) and (3) for taking an employee's protected activities into account as a negative factor in evaluating that employee; and a violation of section 8(a)(1) for threatening employees with the loss of a scheduled wage increase if the union won the election. The Board reversed some of the ALJ's findings of violations and ordered Albis to cease and desist from continuing the practices found, rescind one of the employee appraisals found to be violative of the labor laws by the ALJ, and post a notice to employees reflecting employees' rights and the obligations of Albis not to infringe those rights. Albis declined to comply with the order and the NLRB filed the present application for enforcement.

I

In reviewing petitions for enforcement of NLRB decisions and orders, this court reviews questions of law *de novo,* but defers to the legal conclusions of the Board if reasonably grounded in the law and not inconsistent with the Act. With respect to mixed questions of law and fact, this court will sustain the Board's application of legal interpretation to facts if it is supported by substantial evidence based upon the record considered as a whole. Similarly, the Board's factual determinations must be upheld if supported by substantial evidence. Tellepsen Pipeline Services Co.

v. N.L.R.B., 320 F.3d 554, 559-60 (5th Cir. 2003).

II

The ALJ found, and Board affirmed, that Albis unlawfully interrogated an employee about her union activities in violation of Section 8(a)(1). Albis asserts that the ALJ erred in his credibility determination because he relied on the uncalled witness rule. Although Albis urges that this rule is outdated, this court has recently affirmed the use of the rule by the NLRB and the ALJ's credibility determination must be upheld. Tellepsen, 320 F.3d at 562 (stating that "under NLRB precedent, the failure to call an available witness likely to have knowledge about a particular matter gives rise to an inference that such testimony would be adverse to the party's position and consistent with the opposing party," citing NLRB v. E-Systems Inc., 103 F.3d 435, 439 (5th Cir. 1997)). Thus, despite conflicting testimony, after reviewing the entirety of the circumstances, we cannot say that the conclusion of the ALJ is unsupported by substantial evidence.

The second issue involves disciplinary actions against employee William Hall by his supervisor Bob LaVigne for alleged harassment by Hall of fellow employees. The General Counsel alleged an 8(a)(1) violation for a threat made by LaVigne against Hall, and a separate violation of 8(a)(1) and (3) for a negative performance review of Hall by LaVigne, both unlawful because they were responses to what the General Counsel considered and the Board found to be protected activities. The ALJ concluded that the

3

"harassment" referred to by LaVigne -- repeated discussions about the union with co-workers -- was not the kind of harassment "in which one person repeatedly bothers another in an unwelcome manner over a period of time," but was in fact "simply union activity". The ALJ concluded that Albis had violated Section 8(a)(1) because LaVigne's warnings could be understood only as a veiled threat of discipline if Mr. Hall continued to engage in protected activity. Applying the burden-shifting analysis of Wright Line, 251 N.L.R.B. 1083 (1980), *enf'd.* 662 F.2d 899 (1st Cir. 1981), however, the Board found that, with respect to one evaluation of Hall, Albis had presented evidence that it would have disciplined Hall even in the absence of union activities, dismissed these allegations, and revised the Order and Notice accordingly. After reviewing the record and the findings of the ALJ and Board, we conclude that the other violations upheld by the Board are supported by substantial evidence and cannot be reversed.

The finding that gives this Court the most pause is the conclusion that Albis violated Section 8(a)(1) by threatening to withhold a scheduled wage increase. The facts are fairly clear and uncontested. The company introduced a scheduled pay progression and performance pay system that established a scale of target salaries for each position based on the years worked and skill of the employee. Before the particulars of a scheduled wage increase were finalized, the Union posted a flyer, stating "[c]urrent wages,

4

benefits and practices are frozen at the status quo until a new contract is negotiated. (See other side of this leaflet for an expert legal opinion)." The "expert legal opinion", an attached letter from a Union attorney, stated that "[o]nce a majority of employees designates a union as their bargaining agent, an employer may not change any existing terms and conditions of employment without the consent of the union membership."

The language in the flyer that wages would be frozen apparently caused employees to ask management whether the scheduled wage increases would in fact occur if the union was selected. The ALJ found that Albis' general manager of operations, James Craig, at employee meetings, told employees that if the union won the election, wages would be frozen at the status quo. The credited testimony of Mr. Craig established that "he also told employees that the company planned to go ahead with pay increases it had scheduled for January 1999, but then, picking up a union campaign flyer, said that the company had to be careful. To that, he added the statement that if the union won the election, the wages would be frozen." The ALJ concluded that "[t]his statement is not a correct explanation of an employer's duty under the labor law" and that the "obvious effect of these statements is to present employees with the apparent choice of a wage increase if they did not select the union or a wage freeze if they did." Thus, the ALJ concluded and the Board affirmed, that the statement interfered with, restrained, and coerced employees in the exercise of their

5

Section 7 rights, in violation of Section 8(a)(1).

Albis argues that it was stuck between a rock and a hard place.  On the one hand, it had a scheduled wage increase which it planned to implement.  On the other hand, Albis argues that because the wage increase was not firmly scheduled or finalized, as the effective date and individual amounts of the wage increase were not yet set, Albis risked incurring an unfair labor charge if it went forward.  Given the position set forth in the union flyer, Albis argues that Craig's statements were a good faith effort to avoid the problem.

Although we might have made a different choice had the matter been before us de novo, because Craig apparently was responding to employees' questions about an ambiguous union flyer, we must sustain the findings of the Board if they are supported by substantial evidence on the record as a whole.  See NLRB v. Delta Gas, Inc., 840 F.2d 309, 310 (5th Cir. 1988).  In the light of the established practice of Albis to give regularly scheduled pay increases, as well as its announced intention to grant the January 1999 wage increase at issue here, it is plausible that employees would interpret Craig's statements as a threat that the cost of voting for the union would be to abrogate for an indefinite period of time the existing policy of regular wage increases.  As such, the comments, as interpreted by the ALJ and Board, represent a violation of the clear stricture not to change benefits, for better or worse.  See, e.g., NLRB v. Dothan Eagle, Inc., 434 F.3d 93, 98

6

(5th Cir. 1970) ("whenever the employer by promises or by a course of conduct has made a particular benefit part of the established wage or compensation system, then he is not at liberty unilaterally to change this benefit either for better or worse during the union campaign or during the period of collective bargaining."). We must conclude that there is substantial evidence to sustain the holding that Craig's statements violated Section 8(a)(1).

III

In sum, because we cannot say that the Board's findings are unsupported by substantial evidence, the application for enforcement of the Board's order is GRANTED.

ENFORCEMENT GRANTED.