NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

ASSOCIATED MILK PRODUCERS,
INC., Respondent.

No. 82–4106.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1983.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Robert E. Allen, Atty., N.L.R.B., Washington, D.C., for petitioner.

Stephen L. Andrew, Tulsa, Okl., for respondent.

Before CLARK, Chief Judge, THORN-BERRY, and POLITZ, Circuit Judges.

CLARK, Chief Judge:

The National Labor Relations Board ruled that Donald Brower was discharged by his employer, Associated Milk Producers, Inc., in violation of sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3). The Board ordered full reinstatement with backpay. Because AMP refused to comply with the decision, the Board seeks enforcement of its order pursuant to § 10(e) of the Act, 29 U.S.C. § 160(e). We conclude that the Board's findings are supported by substantial evidence on the record considered as a whole, and enforce its order in full.

I

Brower was employed as an over-the-road truck driver at the Crowley, Texas facility of Associated Milk Producers. Like all over-the-road drivers at AMP, Brower's pay was based on the number of miles he drove during the pay period. Route drivers, on the other hand, were paid an hourly wage.

When Brower was hired, the teamsters local affiliated with the International Brotherhood of Teamsters was conducting an organizing campaign at the Crowley terminal. Brower was openly and vociferously opposed to the union. Brower's supervisor and the terminal manager of the Crowley facility, J.D. Foster, was aware of Brower's anti-union sentiments. At one point, the two men were discussing the activities of two union supporters. Foster told Brower that "he could get rid of anyone at anytime he wanted to, union or not," and that "he would get rid of agitators when the time came."

In September, 1979, Brower was sent on a run to the Oaks Farm Dairy Company in Dallas. When he attempted to back his truck toward an unloading bay door, he hit a column post and a steel cabinet. The accident resulted in $1500 damage to the truck. Brower reported the incident to Foster. Foster responded, "Well, it's no big deal. It happens. Make an accident report and we'll take care of it."

An election was eventually held, and the union lost. It filed objections with the National Labor Relations Board. The Board set aside the election and ordered that a new one be held.

In the spring of 1980, AMP announced that, from that time forward, over-the-road drivers would be paid by the hour rather than by the mile. This resulted in a 60% reduction in Brower's pay. Brower was furious. He immediately became a staunch supporter of the union, and communicated his change of heart to Foster in no uncertain terms. The congenial relationship that had developed between Foster and Brower disintegrated.

Brower was sent to the company's El Paso terminal for a load of milk. While he was there, Brower accused the company of being unfair and urged his fellow drivers to support the union. He also vilified AMP in a meeting with Bob Smith, the El Paso terminal supervisor.

Smith called Foster and told him not to send Brower to the El Paso terminal again. When Brower returned to Crowley, Foster placed him on "sick leave." Apparently, Foster was referring to Brower's remark that AMP's conduct made him sick. Foster said, "The management doesn't want you to come back to El Paso because you talk too much. You agitate."

After several days of "sick leave," Brower filed an unfair labor practice charge with the Board. After a copy of this charge was sent to AMP, Brower was put back to work, this time as a route driver.

On his first day back on the job, Brower was sent to Vandervoot's Dairy in Fort Worth. In the process of backing his rig down the ramp of a loading bay, Brower scraped the left rear fender skirt of the trailer against the wall of the bay. The scratch was ten to twelve inches long. It was hardly noticeable among the many scratches and marks already present on the

fender skirt. The mishap was observed by two witnesses. Neither witness said anything to Brower, but one reported the event to Foster two days later.

Foster called Brower to his office and charged Brower with failure to report an accident. Despite Brower's claim of ignorance, Foster discharged him. Foster cited the company rule, found in the drivers' manual, that provided: "Every accident is to be reported to AMPI, giving all the possible information before leaving the scene of the accident. Failure to report an accident is cause for immediate dismissal." Brower asked how many other employees had been fired because they failed to report an accident. Foster answered, "None. But I'm firing you."

The Board's General Counsel filed a complaint on Brower's behalf. An administrative law judge dismissed the complaint. The ALJ concluded that the General Counsel established a prima facie case that the company had violated section 8(a)(3), but that the company had successfully rebutted that case by proving that it would have discharged Brower notwithstanding his protected activities.

The General Counsel filed exceptions to the ALJ's decision. The Board reversed. The Board agreed that the General Counsel proved a prima facie case of unlawful discharge. It disagreed, however, with the ALJ's conclusion that AMP had successfully rebutted the prima facie case, and concluded that Brower had been illegally discharged. AMP's refusal to comply with the order has resulted in this appeal.

## II

AMP argues that the Board improperly allocated the burden of proof. In *Wright Line,* 251 N.L.R.B. 1083 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), the Board formulated the correct allocation of the burden of proof in dual motive discharge cases such as this one. The *Wright Line* formula was recently approved by the Supreme Court in *National Labor Relations Board v. Transportation Management Corp.,* —— U.S. ——, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983).

Under *Wright Line,* the General Counsel has the initial burden of persuading the Board that an anti-union animus contributed to the employer's decision to discharge an employee. This burden never shifts. The General Counsel *always* retains the responsibility to show that the employee's protected conduct was a substantial and motivating factor in the adverse action. *See* § 10(c) of the NLRA, 29 U.S.C. § 160(c).

An employer may prove that the employee's protected activity was not a substantial and motivating factor in its decision to discharge the employee. But even if the General Counsel is able to establish his prima facie case, the employer may still avoid a finding that it violated the Act if it can prove by a preponderance of the evidence that it would have discharged the employee even if the employee had not been involved with the union. Proof that the discharge would have occurred irrespective of the employee's protected activity and for valid reasons amounts to an affirmative defense on which the employer carries the burden of proof by a preponderance of the evidence. *Transportation Management Corp.,* —— U.S. at ——, 103 S.Ct. at 2472.

In the case at bar, the Board correctly placed the burden of proof on AMP to demonstrate that Brower would have been terminated even absent his union activities. By requiring the company to establish its affirmative defense, the Board did not change or add to the elements of the unfair labor practice that the General Counsel had the burden of proving under § 10(c). In short, the company's contention that the Board's order cannot stand because of its reliance on *Wright Line* has been foreclosed in *Transportation Management Corp.*

## III

AMP argues that the General Counsel failed to prove a violation of sections 8(a)(3). First, it contends that there was no evidence that Brower engaged in protected

activity. This contention is without merit. Brower vigorously advocated support for the union to several employees at the company's El Paso facility. Such solicitation is unquestionably an activity inducing group action that is protected under section 7 of the Act, 29 U.S.C. § 157. *See NLRB v. McCauley,* 657 F.2d 685, 687–88 (5th Cir. 1981).

AMP also argues that it had a legitimate business reason for discharging Brower. It points to the company rule requiring drivers to report their accidents, and Brower's failure to comply with that rule. The Board concluded that AMP failed to prove that it would have discharged Brower even if Brower were not a union supporter. Substantial evidence supports this determination. The company's rule is discretionary on its face. It provides: "Failure to report an accident is cause for immediate dismissal." Thus, the company was not compelled in any way to discharge Brower. Foster admitted that no other employee had ever been fired for failure to report an accident. When Brower was anti-union and did $1500 damage to his truck, he did not even receive a reprimand. The accident that resulted in his discharge was trivial, yet the penalty was severe, and inflicted without warning. The evidence strongly indicated that Brower was not even aware of the accident. Foster had previously threatened to "get rid of agitators when the time came." In a prior case, AMP was found to have illegally seized upon a minor infraction of the rules in order to discharge a union sympathizer. Given all this evidence, the Board was certainly entitled to conclude that AMP failed to prove the elements of its *Wright Line* affirmative defense by a preponderance of the evidence.

### IV

Our review of the record convinces us that the Board's findings and conclusions are supported by substantial evidence. The General Counsel successfully proved by a preponderance of the evidence that AMP's anti-union animus was a substantial and motivating factor in the decision to dis-

charge Brower. AMP failed to prove that Brower would have been discharged even if his sentiments had remained anti-union. For these reasons, the Board's petition for enforcement of its order is

GRANTED.