IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 3, 2008

Charles R. Fulbruge III
Clerk

No. 07-60600

Summary Calendar

EL PASO ELECTRIC CO

Petitioner - Cross-Respondent

v.

NATIONAL LABOR RELATIONS BOARD

Respondent - Cross-Petitioner

Petitions For Review for Enforcement of the
Order of the National Labor Relations Board
Cases 28-CA-19551 and 28-CA-20017

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:[*]

The National Labor Relations Board ("Board") found that Appellant El Paso Electric Co. ("EPEC") violated § 8(a)(3) of the National Labor Relations Act ("Act") when it reprimanded one of its employees. Appellant challenges this finding, and the Board seeks enforcement of its order. For the reasons below, we AFFIRM the Board's order and enforce it in full.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

EPEC is an electric utility that provides electricity for residents and businesses in western Texas and southern New Mexico. Sira Fanely has worked as a customer service representative ("CSR") at EPEC's Chelmont office for 17 years.

Since 1944, the International Brotherhood of Electrical Workers, Local 960 ("Union") has represented EPEC's operational employees. In 2004, the Union sought also to unionize EPEC's CSRs. Fanely openly supported the Union's efforts and made her views known to EPEC's CEO and two of her supervisors, Rose Lowe and Yvonne Garcia. Lowe is EPEC's supervisor for the Texas outlying offices, including the Chelmont office. Garcia has headed the Chelmont office since March 2004.

On July 22, 2004, Lowe and Garcia conducted Fanely's six-month evaluation. Fanely had been unhappy with Garcia's recent promotion. When Fanely saw Garcia at her evaluation, she became noticeably upset and asked Lowe why Garcia was present. Nonetheless, Lowe gave Fanely a glowing evaluation.

A few weeks later, on August 10, 2004, Fanely asked Garcia if she could work overtime to follow up on customer orders and complaints. Although Garcia denied her request, Fanely decided to work late without compensation. Fanely contends that, the next day, Lowe encouraged her to record the extra time on her time sheet.

EPEC's CSRs voted to unionize on August 20, 2004. The next day, EPEC unexpectedly added restrictions to the CSRs' lunch schedules and cashier rules at the Chelmont office. Fanely reported these unilateral changes to the Union. When Felipe Salazar, the union representative, contacted EPEC's employee-relations representatives to inquire about the changes, one of the representatives told him that the restrictions were

intended to "straighten out" Fanely. The other representative also characterized Fanely as a "trouble employee."

Fanely met with Garcia, Lowe, and the team leader of EPEC's Fabens office to discuss customer service issues on August 24, 2004. Over three weeks later, on September 16, 2004, the team leader emailed Lowe to complain about Fanely's allegedly negative attitude at the meeting.

In September 2004, one of the Chelmont CSRs, Hilda Bautista, quit. During her exit interview, Bautista complained about Fanely's purportedly disruptive influence at the Chelmont office. Moreover, another CSR, Nora Munoz, heard Fanely speak ill of Bautista in the break room. EPEC did not investigate these claims.

On September 21, 2004, EPEC held a training session for the CSRs. A week later, the team leader of the Anthony office, who also attended the training, emailed Lowe to complain about Fanely's attitude at the training. When Fanely's union representative inquired about the allegation, however, the officer who led the training said that every employee at the training was friendly and professional.

Lowe issued Fanely a written warning on September 29, 2004, citing the various instances when Fanely was allegedly disruptive and insubordinate in the preceding months. The Union subsequently filed unfair labor practice charges against EPEC. On April 4, 2005, the administrative law judge ("ALJ") concluded that EPEC had violated §§ 8(a)(1), (3), and (5) of the Act. On June 29, 2007, the Board affirmed as to the §§ 8(a)(3) and (5) claims, agreeing with the ALJ that EPEC had improperly: (1) disciplined Fanely and (2) changed its policy regarding lunch schedules and cashier rules. The Board, however, reversed as to the § 8(a)(1) claim.

EPEC now appeals only the Board's determination that it violated § 8(a)(3) when it reprimanded Fanely. EPEC contends that the Board erred

when it concluded that EPEC disciplined Fanely because she supported the Union.

II.

An employer violates § 8(a)(3) when it disciplines its employees for participating in union activities. Valmont Indus. v. NLRB, 244 F.3d 454, 463 (5th Cir. 2001). The Board establishes a prima facie violation of § 8(a)(3) by demonstrating that "union animus" motivated the disciplinary action. See id. If the Board establishes a prima facie violation, then the employer may prevail only if it shows by a preponderance of the evidence that it would have disciplined the employee even if she had not engaged in protected union activities. See NLRB v. Associated Milk Producers, Inc., 711 F.2d 627, 629 (5th Cir. 1983).

"Motive is a factual matter to be determined by the Board, and the Board reasonably may infer motive from the circumstances surrounding the employer's actions, as well as from direct evidence." NLRB v. Mini-togs, Inc., 980 F.2d 1027, 1032 (5th Cir. 1993). In reviewing the Board's factual findings, we must consider the whole record to determine whether they are supported by substantial evidence. See id. "The Board and its ALJ are due deference when a finding of fact rests on resolution of witness credibility." Id. We must uphold "[r]easonable inferences or conclusions drawn by the Board . . . even though this court would justifiably make a different choice were the matter before us de novo." Id.

The Board concluded that EPEC reprimanded Fanely because of her support for the Union. We find that substantial evidence supports this determination. See id. at 1032. First, the evidence shows that Fanely's supervisors knew that she supported the Union and were unhappy with her union activities. After the CSRs voted to unionize, EPEC immediately added previously unannounced restrictions to the CSRs' lunch schedules and cashier

rules. Fanely reported these unilateral changes to the Union. One of EPEC's employee-relations representatives stated that these changes were made to "straighten out" Fanely, and another representative characterized Fanely as a "trouble employee."

Second, the timing of the reprimand belies EPEC's claim that it disciplined her because of her negative attitude. Lowe gave Fanely a glowing evaluation on July 22, 2004, which praised Fanely for being "diligent about following rules and regulations" and for being "helpful to her fellow co-workers." On September 29, 2004, one month after the CSRs voted to unionize, Lowe's opinion of Fanely changed dramatically. In a written reprimand, Lowe excoriated Fanely for "openly resist[ing] coaching and instruction" and requested that she refrain from exhibiting "abusive, threatening, insubordinate, or inappropriate behavior towards [her] fellow employees, customers, or management." Together with EPEC's earlier stated intent to "straighten out" Fanely, this sudden, diametrical change in opinion supports the Board's finding that union animus motivated Fanely's written reprimand and that EPEC's stated reason for disciplining Fanely was pretextual.[1]

The Board also concluded that EPEC failed to carry its burden to show that it would have reprimanded Fanely even if she had not engaged in protected union activities. We agree. In arguing that it would have disciplined Fanely regardless of her support for the Union, EPEC cites

---

[1] EPEC cites NLRB v. Brookshire Grocery Co., 837 F.2d 1336 (5th Cir. 1988), to support its argument that the Board failed to establish union animus because: (1) Fanely had supported unionization for years before her reprimand; and (2) EPEC promoted another employee who supported the Union. But Brookshire Grocery stands only for the proposition that courts may consider these facts when determining the employer's motivation. See id. at 1340-41. In light of the other evidence discussed above, we find that, despite these two facts, substantial evidence supports the Board's finding that EPEC disciplined Fanely because of her union activities.

numerous instances when Fanely was purportedly rude or insubordinate, all of which EPEC claims stem from Fanely's displeasure over Garcia's promotion.[2]  But whether EPEC would have given Fanely a written reprimand over these instances alone is unclear.  The problem is that EPEC has failed to establish how egregious an employee's actions must be to warrant a written reprimand.[3]  As discussed above, EPEC carries the burden to demonstrate that it would have so disciplined Fanely even if she had not participated in union activities.  But we cannot make this determination if we do not know what type of conduct calls for a written reprimand under EPEC's company rules.

To compound the problem, many of EPEC's allegations against Fanely are conclusory and supported by little evidence.  First, the only evidence that Fanely was rude during the August 2004 meeting was a vague email characterizing Fanely as "negative" that a team leader sent more than three weeks after the meeting.  Second, EPEC failed to investigate Bautista's complaints against Fanely.  Without the findings of an investigation, we are left with only one-sided allegations from a former employee who undisputedly had "bad blood" with Fanely and the other CSRs.[4]  Third, while EPEC claims that Fanely was insubordinate when she worked overtime on August 10, 2004, Fanely and Lowe have different accounts of what occurred.  The ALJ

---

[2] We note that the timing of Fanely's alleged metamorphosis from model to trouble employee does not corroborate EPEC's argument.  Garcia was promoted in March 2004, and Fanely was undisputedly a model employee long after the promotion–as evidenced by the glowing evaluation Lowe gave Fanely on July 22, 2004.

[3] For example, EPEC could have made this showing by submitting into evidence the company's rules.  See Associated Milk Producers, 711 F.2d at 629-30.

[4] In its brief, EPEC claims that Munoz's report that she heard Fanely speak ill of Bautista rendered an investigation unnecessary.  This argument lacks merit because: (1) EPEC has not shown that one could receive a written reprimand for speaking ill of a co-worker; and (2) Bautista might have provoked Fanely, which is impossible to know without an investigation.

ultimately found Fanely more credible when she testified that Lowe did not accuse her of being insubordinate and, in fact, asked her to record her overtime so that she would receive credit. We defer to the ALJ's determination as to Lowe's and Fanely's credibility and see no reason to overturn this finding. See Mini-togs, Inc., 980 F.2d at 1032. Finally, Fanely acknowledges that she was upset over Garcia's participation at her six-month evaluation. But EPEC has not shown that this display of displeasure warranted a written reprimand, especially given that Lowe subsequently gave Fanely a glowing evaluation that praised her for being "diligent about following rules and regulations" and "helpful to her fellow co-workers." Moreover, Lowe issued Fanely the reprimand two months after the evaluation. This gap in time makes it unlikely that Fanely's conduct at the evaluation was the basis of the reprimand.[5]

### III.

For the reasons above, we AFFIRM the Board's order and enforce it in full.

---

[5] On appeal, EPEC seemingly does not contend that it would have reprimanded Fanely, regardless of her union activities, because of her alleged misconduct at the September 2004 meeting. Even if EPEC were to make this argument, however, we note that the testimony of one of EPEC's officers contradicts EPEC's allegation that Fanely was discourteous at the meeting.