INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 80–1709.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 19, 1982.

Decided Feb. 17, 1982.

Leonard R. Page, Associate Gen. Counsel, Detroit, Mich., Michael L. Fayette, Kleiner & De Young, Grand Rapids, Mich., Judith Scott, Detroit, Mich., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., Michael Messitte, Detroit, Mich., for respondent.

Before BROWN and MARTIN, Circuit Judges, and NIES,* Judge.

PER CURIAM.

This case is before the court upon a petition of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) ("the Union"), the charging party below, to review the Board's order reported at 251 NLRB No. 53. A three-member panel of the Board (Member Truesdale dissenting) dismissed in its entirety a complaint, issued in behalf of the Union, charging unfair labor practices by FitzSimons Manufacturing Company, West Tube Division ("the Company"). The Union charged that the Company had violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., by refusing to meet and bargain with the Union's designated representative, Paul Mastos. The Board found that the Company was relieved of its duty to bargain with Mastos because he had engaged in conduct rendering good faith bargaining impossible.

The events leading up to this petition began on October 31, 1977, when Mastos, who had been the Union's servicing representative at the Company's plant since 1974, met with Company officials to discuss the Company's suspension of the employee members of the Union bargaining committee. The employee members did not attend the meeting. Mastos and the Company reached an agreement, which was summarized in a handwritten memorandum of

---

* The Honorable Helen W. Nies, Judge of the United States Court for Customs and Patent Appeals, sitting by designation.

understanding. Subsequently, both parties signed a typed document formally resolving the suspensions.

The following spring, negotiations between the Union and the Company began to break down. On June 1, 1978, Company officials refused to meet with Mastos because he insisted upon tape recording the meeting. The Union then filed a grievance protesting the termination of the meeting, and the Company filed a response. Mastos called Company plant manager Foltz and complained that the response included a reference to the handwritten October 31, 1977 memorandum. Mastos told Foltz that he had not informed the entire bargaining committee of the details of the October 31 meeting and that he regarded the meeting as confidential.

Another bargaining session was held on June 29, 1978. Foltz and the Company's personnel manager, Frank Vogel, were both present, as were Mastos and the entire Union bargaining committee. In the course of the discussion, Vogel made reference to the October 31 meeting. Mastos stopped the meeting and told the bargaining committee to leave the room. Mastos then told Vogel that the October 31 meeting was confidential. Vogel denied that the meeting was confidential. Mastos replied that if Vogel raised the October 31 meeting again, Mastos would punch Vogel in the mouth and knock him "on his ass."

The bargaining committee returned to the room. Vogel said, "I have one comment to make about...." Mastos interrupted Vogel, reached across the desk, grabbed Vogel by his tie, and pulled upwards. Foltz separated Mastos and Vogel. Mastos then challenged Vogel to come outside to the parking lot. Vogel declined, and the meeting broke up.

That afternoon, the Company sent the Union a telegram requesting that Mastos be removed as servicing representative. In September of 1978, the Company advised the Union that it would not meet with the Union if Mastos were present. The Company has not engaged in a general refusal to bargain with the Union, but has met and resolved grievances with another representative acting in place of Mastos.

The issue in this case is whether Mastos's conduct was sufficiently egregious to justify an exception to the general rule that each party to a collective bargaining agreement has the right to choose the individuals it desires to represent it. Generally, such exceptions are confined to situations so infected with ill will that good faith bargaining is impossible. *General Electric Co. v. NLRB*, 412 F.2d 512, 517 (2nd Cir. 1969).

As the parties point out, there are facts supporting each side's position. The Union views Mastos's assault as an isolated occurrence and contends that Vogel provoked the incident. The Board emphasizes that, in its view, the assault was unprovoked, that it was directed toward a high corporate official, and that it took place in the presence of the employee bargaining committee, whose members look to Mastos for leadership.

In a case such as this, where there is factual support on both sides, it is well settled that a reviewing court may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Andino v. NLRB*, 619 F.2d 147, 151 (1st Cir. 1980). Since the Board's determination that Mastos's conduct rendered good faith bargaining impossible was a permissible interpretation of the facts, this court may not disturb it on review.

Accordingly, the Board's order dismissing the complaint is AFFIRMED.