**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 20-1025 & 20-1102

_____

ARBAH HOTEL CORP., d/b/a Meadowlands View Hotel,
Petitioner in No. 20-1025

v.

NATIONAL LABOR RELATIONS BOARD,
Petitioner in No. 20-1102

_____

On Petition for Review and Enforcement of a Decision and Order
from the National Labor Relations Board
(NLRB Docket Nos. 22-CA-197658, 22-CA-203130, 22-CA-205317,
22-CA-205422, 22-CA-209158 & 22-CA-212705)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 19, 2020

Before: AMBRO, BIBAS, and Roth, *Circuit Judges*

(Filed: February 16, 2021)

_____

OPINION*

_____

BIBAS, *Circuit Judge*.

Employers may not make major decisions about unionized employees on their own.

Instead, they must work with unions in good faith to solve problems. Arbah Hotel Corp.,

though, repeatedly bypassed its union. It fired a longtime maid for complaining to the

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

union. It banned a union representative from the Hotel without talking to the union. And it let an old health-insurance plan lapse before ensuring that a new one took effect. All three actions violated the National Labor Relations Act. So we will deny the Hotel's petition for review and grant the Board's application to enforce its order.

## I. BACKGROUND

### A. Conflict with the Union

Arbah runs a hotel in northern New Jersey. The New York Hotel and Motel Trades Council is a union that represents many of its employees, including its maids, cooks, and maintenance workers.

The Hotel and the Union negotiated a collective-bargaining agreement in 2011. That contract expired in 2015. For the next two years, they negotiated but never settled on a new agreement. Meanwhile, the employees kept working under the expired contract. During those two years, the Hotel and the Union had three major disputes. We accept the Administrative Law Judge's (ALJ) factual findings about those disputes as conclusive as long as the findings are supported by substantial evidence:

1. *The firing of Marie Dufort.* Hotel maid Marie Dufort went to the Union for help several times. Once, she found drugs in one of the rooms and reported it. A manager scolded her for entering the room, so she went to the Union.

Another time, the Hotel called Dufort in for work. But it made a mistake. It did not need her that day, so it sent her home without pay. Upset, she complained to the Hotel and the Union.

2

Finally, a supervisor told Dufort to change a stained comforter. Dufort claims she did; the Hotel says she flipped it over instead. The Hotel's vice president disciplined her, issuing two warnings. He was planning not to fire her, but to "give her another chance." AR 201. But after Dufort complained to the Union, upsetting the vice president, he fired her.

2. *The ban of George Padilla*. Union representative George Padilla regularly visited the Hotel to check on employees. On one visit, he and a Hotel employee got into a heated argument. The next day, the Hotel sent the Union a letter, banning him from the Hotel. But Padilla did return. And nearly a year later, the Hotel sent another letter again banning him and threatening to call the police if he returned. So Padilla did not return after that, but had to help employees remotely.

3. *The lapse in health insurance*. Each month, the Hotel paid into a health-insurance fund for its employees. Then, the Hotel repeatedly missed its payments. Each time, the Fund told the Hotel that unless it paid up, the Fund would cancel the health insurance. For several months, it made those payments late. Then, the Hotel stopped making payments and decided to get coverage through a new insurer. So the Fund cancelled its coverage. But the Hotel did not finish setting up the new health insurance for seven more months. During that time, the employees went without insurance.

**B.  The Board's decision and this petition for review**

The Union filed charges for these and other disputes with the National Labor Relations Board. The ALJ sustained them all. She found that the Hotel had violated the National Labor Relations Act by firing Dufort, banning Padilla, and failing to make health-insurance

payments to the Fund. She also found other violations. The Board affirmed, adopting the ALJ's findings.

So the Hotel turns to us. On this petition for review, it challenges the Board's decisions on only the three disputes above. The Board seeks to enforce its order. We have jurisdiction under 29 U.S.C. § 160(e)–(f). The Board did not make any legal errors in its decision. And substantial evidence supports the ALJ's findings. So we will deny Arbah's petition, grant the Board's cross-application, and enforce the Board's whole order.

## II. THE HOTEL FIRED DUFORT FOR COMPLAINING TO THE UNION

To start, the Board found that Dufort engaged in protected activity and the Hotel fired her for it. We must accept that finding if it is "supported by substantial evidence on the record considered as a whole." § 160(e)–(f). It is.

Dufort complained to the Union about being called into work without pay, about being punished for flipping a comforter, and about being chastised for going into a hotel room that had drugs in it. Those complaints are protected activity. *See Champion Parts Rebuild-ers, Inc., Ne. Div. v. NLRB*, 717 F.2d 845, 849 (3d Cir. 1983). An employer cannot fire a union employee for protected activity. 29 U.S.C. §§ 157, 158(a)(1), (a)(3). The employer is liable even if the protected activity is not the employer's sole reason for firing her, but just a substantial or motivating factor. *1621 Route 22 W. Operating Co., LLC v. NLRB*, 825 F.3d 128, 145–46 (3d Cir. 2016). To counter, the employer must show that it would have fired the employee even without her union activity. *Id.* The Hotel has not done so.

On the contrary, Dufort's protected activity evidently motivated her firing. For one, the Hotel knew of her complaints. *NLRB v. Omnitest Inspection Serv., Inc.*, 937 F.2d 112, 122

4

(3d Cir. 1991). The Hotel's vice president was upset by them. He criticized them as costing "a lot of time and money." AR 58–59. And he warned her that "when [the] Union comes, things get ugly." AR 296.

The timing of Dufort's firing is also telling. *Omnitest*, 937 F.2d at 122. The Hotel fired her shortly after she complained to the Union about being disciplined for the stained comforter. At first, the vice president wanted to give her "another chance." AR 201. But then he grew "very upset" and fired her because, as a coworker related, "she had called the Union." AR 169.

The Hotel claims that it had good cause to fire Dufort, pointing to her two disciplinary violations. But the Board reasonably found these were a pretext. The Hotel had never before disciplined a maid for flipping a stained comforter. Indeed, a supervisor had even encouraged it. The Hotel had fired only one other Union employee, and that was for stealing from a guest's room. Yet it singled out Dufort for following a common housekeeping practice. That points to pretext. *New Orleans Cold Storage & Warehouse Co. v. NLRB*, 201 F.3d 592, 601 (5th Cir. 2000).

In short, substantial evidence supports the Board's decision that the Hotel fired Dufort for complaining to the Union.

### III. THE HOTEL IMPROPERLY BARRED PADILLA FROM VISITING

Next, the Board decided that the Hotel violated the Act by unilaterally banning Padilla from its premises. Employers must let union representatives visit. After all, a union needs to reach its members, even if the parties are between collective-bargaining agreements. *NLRB v. Unbelievable, Inc.*, 71 F.3d 1434, 1438 (9th Cir. 1995). In the collective-

5

bargaining agreement, the parties agreed that the Hotel had to admit "[o]fficial representatives of the Union" to let them "observe the working conditions" at the Hotel. AR 819. Yet the Hotel barred Padilla. The Board decided that it should not have. We agree.

**A. The Hotel has not shown that it was impossible to work with Padilla**

The Hotel had no basis to ban Padilla. The Hotel claims that Padilla's "hostile conduct" made it "impractical" to bargain with him. Pet'r's Br. 62–63. But unionized employees get to pick their representatives. 29 U.S.C. § 157. The employer must bargain with, and admit, those representatives. *NLRB v. Int'l Ladies' Garment Workers' Union, AFL-CIO*, 274 F.2d 376, 378 (3d Cir. 1960). There is an exception, though, if the representative breeds so much "ill will that good faith bargaining is impossible." *Int'l Union, UAW v. NLRB*, 670 F.2d 663, 664 (6th Cir. 1982).

The Hotel has not shown that. The Hotel claims that Padilla got into a "fight" with an employee. Pet'r's Br. 16. But the record suggests otherwise: One day, he entered a meeting with management to talk about health insurance. Padilla and hotel employees kept interrupting one another. Padilla cursed at an employee in Spanish and asked him to stop interrupting him. That angered the employee. To avoid a fight, others stepped in to separate the two. The incident was hardly ideal. But the witnesses mostly agreed that the employee, not Padilla, escalated the dispute. And a physical fight never broke out. This heated argument is not enough to show so much "ill will" that it was "impossible" to work with him. *Int'l Union, UAW*, 670 F.2d at 664.

6

**B. The Hotel did not negotiate with the Union before banning Padilla**

If an employer has a problem with a union representative, it cannot simply bar him. Instead, it must first discuss the problem with the union and try to work it out. *Unbelievable*, 71 F.3d at 1438. Yet both times the Hotel banned Padilla unilaterally.

**C. The Settlement Agreement did not let the Hotel ban Padilla permanently**

The Hotel claims, however, that it had the contractual right to exclude Padilla. In response to its first ban, the Union filed a charge with the Board. To settle that charge and others, the parties entered a settlement agreement: "The Employer will not bar any Union representatives from the Hotel nor interfere with their access pursuant to the expired [collective-bargaining agreement]. Prior to Mr. Padilla returning to the Hotel, the parties shall meet, provided such meeting must take place before February 15, 2017." AR 845–47. That meeting never happened. So the Hotel claims that Padilla could not return to the hotel—ever.

Not so. We interpret the settlement agreement de novo. *Engelhard Corp. v. NLRB*, 437 F.3d 374, 377 (3d Cir. 2006). The agreement set a deadline for a meeting, not a condition for Padilla's return. That is what "provided" means. *Provided* (def. 1), *Black's Law Dictionary* (11th ed. 2019). Because the meeting did not happen by February 15, the parties no longer had to meet, and Padilla could return. And in the preceding sentence of the agreement, the Hotel promised not to bar any Union representatives. We will not read the second sentence to swallow the first. Plus, the parties struck the settlement agreement to resolve the grievance over the first time the Hotel banned Padilla. As the Board found, it is "entirely

7

implausible" that the settlement of this charge would let the Hotel "ban Padilla permanently from its facility by simply refusing to meet with the Union." AR 1061 n.2.

## IV. THE HOTEL HAD NO RIGHT TO CANCEL ITS EMPLOYEES' HEALTH INSURANCE WITHOUT A REPLACEMENT

Finally, the Board rightly found that the Hotel violated the collective-bargaining agreement by unilaterally cancelling its employees' health insurance. An employer must bargain in good faith over employment terms, including health insurance. 29 U.S.C. § 158(a)(5), (d). Once the terms are set, the employer may not change them without negotiating with the union. *NLRB v. Katz*, 369 U.S. 736, 743, 747 (1962).

The Hotel had a duty to provide health insurance. In the collective-bargaining agreement, it promised to "pay the entire cost of health coverage for each eligible employee" to the Fund. AR 934. Even after the agreement expired, that duty continued. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991). The Hotel breached that duty by halting its contributions, causing its employees to lose coverage.

In defense, the Hotel argues that it had the right, thanks to a side agreement, to unilaterally "change providers, provided such alternative maintains the same if not better level of current benefits." AR 960. But the Hotel did not "change" plans while maintaining "the same if not better level of current benefits." It began the process but did not finish the switch in time. It failed to submit its employees' information or pay for the new plan before the old one lapsed.

Faced with this failure, the Hotel blames the Union for "intentional[ly] refus[ing]" to give it the information it needed to set up the new insurance. Pet'r's Reply Br. 4. But the

8

Hotel could and did get that information directly from its employees. Even if the Union acted in bad faith, the Hotel still had to uphold its end of the bargain. Its remedy was to bring charges against the Union, as it did, not to let its employees' insurance lapse. *See* Compl., *Arbah Hotel Corp. v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, No. 2:17-cv-07701 (D.N.J. Sept. 28, 2017). The Board properly held the Hotel liable for letting its employees' insurance lapse.

## V. THE BOARD IS ENTITLED TO ENFORCE ITS ORDER

Finally, the Hotel adds one more objection for the first time. It challenges the Board's remedy as "overbroad." Pet'r's Reply Br. 11. The Board ordered the Hotel to make seven months' worth of delayed payments to the Fund, even though the Fund did not insure the employees for those seven months. The Hotel might be right that it should not pay the Fund for coverage that it did not provide. But it did not object before the Board (or even in its opening brief). We cannot hear this brand-new objection because there are no "extraordinary circumstances" to justify the delay. 29 U.S.C. § 160(e). Instead, it will have to challenge the remedy in a later compliance proceeding. *NLRB v. Saint-Gobain Abrasives, Inc.*, 426 F.3d 455, 460 (1st Cir. 2005).

The Hotel did not object to the rest of the Board's order here or below, so we will summarily enforce those parts as well. *NLRB v. FES, a Div. of Thermo Power*, 301 F.3d 83, 88–89, 93 n.4, 95 n.6, 96 (3d Cir. 2002).

\* \* \* \* \*

The Hotel fired a maid for complaining to the Union, banned a Union representative from its premises, and left its employees without bargained-for health insurance for seven

9

months. By doing so, it violated the Act. So we will deny the Hotel's petition for review,

grant the Board's cross-application for enforcement, and enforce the whole order.